UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN W. PEROTTI,<br><br>              Plaintiff,<br>  vs.<br><br>MS. QUIONES, et al.,<br><br>              Defendants. | 2:10-cv-86-JMS-MJD |

### Entry Discussing Motion for Summary Judgment

Plaintiff John Perotti brings this challenge to the decision by staff at the United States Penitentiary in Terre Haute, Indiana ("USP") to remove him from his position as a clerk in the prison's law library. The defendants move for summary judgment.

### Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007)."'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

## Facts[1]

Plaintiff John Perotti is currently incarcerated at the United States Penitentiary in Coleman, Florida, and was previously incarcerated at the USP in Terre Haute, Indiana. Perotti was assigned by his Correctional Counselor, Susan Larson, to be a law library clerk at the USP Terre Haute beginning on September 17, 2008. Before his assignment as a library clerk, he was an education orderly.

All physically-able inmates are to have job assignments, if possible, which are made by their assigned Unit Team. Several factors are taken into consideration when hiring and firing an inmate worker, including job performance, conduct, and whether there is a need for the position in the department. The ultimate decision whether to hire a library worker comes from an education staff member assigned as the librarian. An inmate may be removed from a job assignment for various reasons. Some of these reasons are: a perceived threat by the staff member; the need for the position no longer exists; the inmate is placed under investigation for violation of BOP rules, regulations, policies, or when it is time to rotate inmates from one job to the other. Inmates are never promised a job in a particular department for any specified time frame.

Defendant Kelsheimer was a teacher in the Educational Department of the USP Terre Haute. At the time of the incident in the complaint, she was also responsible for processing inmate pay, but was not otherwise involved with Perotti's work assignment. She did not terminate Perotti's work assignment and was not involved in any decisions related to the termination. As a teacher, she would not normally have been aware of administrative grievances filed by inmates. Perotti says that at the end of August 2008, Kelsheimer asked him if he wanted to be the weekend law clerk. He agreed and she said he would start right away. About a week and a half later, when Perotti had not been assigned to be a law clerk, he asked why. Kelsheimer told him that Defendant Quinones told her not to give him the job because he files too many administrative grievances.[2] Perotti "took this up" with Quinones with "no positive results." Perotti filed a grievance and was allowed to have the law clerk job.

On October 1, 2008, Perotti asked Defendant Wheeler, a teacher in the Education Department if he could use the copier. Wheeler looked at his papers and would not allow him to copy them. Wheeler then searched his bag and confiscated some documents. Wheeler wrote an incident report on Perotti for lying and possessing another prisoner's property. Perotti alleges that Wheeler called counselor Larson and told her to remove Perotti from his job. Perotti's assignment as a library clerk was terminated by correctional counselor Larson, pending the outcome of the incident report written by Wheeler. Perotti lost his law library clerk job before a hearing on the incident report.

---

1 Perotti challenges to the affidavits used to support the defendants' motion for summary judgment, arguing that they are not based on personal knowledge and are conclusory in nature. Because it is clear from the affidavits that the testimony is based on the affiants' personal experience, the court rejects Perotti's challenge.

2 Defendant Quinones is the Supervisor of Education at the USP. She is responsible for organizing and implementing various inmate education programs and for supervising the teachers and instructors.

Perotti filed a grievance related to this action at the BP8 (Institution) level. BOP staff are encouraged to attempt to resolve issues with inmates at the BP8 or Institution level before requiring the inmate to file the formal Administrative Remedy process. In an effort to informally resolve Perotti's grievance, Associate Warden Mosley agreed to award Perotti back pay from October 1, 2008, to February 28, 2009, resulting in a payment of $100.63, and instructed the Supervisor of Education to ensure that Perotti received this back pay. On April 17, 2009, Perotti signed an informal resolution of his grievance and received the back pay.

Associate Warden Mosley decided to offer Perotti back pay because he was removed from his work assignment in the Education Department by the Unit Counselor, prior to being sanctioned for violating a prohibited act by the Unit Disciplinary Committee ("UDC"). Perotti was later sanctioned by the UDC with a loss of job, and was removed from his work assignment in Education. The back pay covered the period of time up to the UDC sanction of loss of job. The decision to award Perotti back pay and remove him from his job assignment was a legitimate management decision based upon Associate Warden Mosley's professional judgment that the Education Department would be best maintained by his removal.

Based on the incident report, Perotti was found guilty at a hearing of lying and possessing property belonging to another prisoner. Perotti appealed to the Warden. The Warden reversed the charge of possessing another prisoner's property, but affirmed the lying charge. Perotti appealed that decision and the lying charge was reversed.

## Discussion

The defendants argue that they cannot be held liable for Perotti's claims because they were not personally involved in the decisions regarding his law library job.

"Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). "[A]n official meets the personal involvement requirement when she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Black v. Lane,* 22 F.3d 1395, 1401 (7th Cir. 1994)(quoting *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985)) (citations and internal quotations omitted). Without such an allegation, there can be no recovery. *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009)("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. . . .").

*Quinones*

Quinones is the Supervisor of Education at the FCC. She is responsible for organizing and implementing various inmate education programs and for supervising the teachers and instructors. Perotti asserts that Ms. Kelsheimer told him that Ms. Quinones told her not to give him the law clerk job because he files too many administrative grievances. Perotti "took this up" with Quinones with "no positive results." Quinones

testifies that she did not terminate Perotti's work assignment. Perotti's testimony to the contrary is unsupported hearsay and is therefore insufficient to rebut Quinones' evidence.

*Kelsheimer*

Kelsheimer was a teacher in the Educational Department of the FCC. At the time of the incident complained of in the complaint, Kelsheimer was responsible for processing inmate pay, but was not otherwise involved with Perotti's work assignment. Specifically, Kelsheimer did not terminate Perotti's work assignment and was not involved in any decisions related to the termination. Perotti does not even allege that she did terminate his work assignment. He alleges simply that Quinones told her not to give him the job because he filed too many administrative grievances. According to Perotti, the decision was not Kelsheimer's to make at all.

*Wheeler*

Defendant Wheeler was also a teacher in the Educational Department of the USP. In October 2008, she was the GED teacher.

Wheeler looked at the papers and would not allow Perotti to copy them, explaining that he is not allowed to help an inmate file a lien on an employee. About fifteen minutes later, Wheeler and a hallway guard came into the law library. Wheeler told Perotti to give her the papers she read, but he said he did not have them. She searched his bag and confiscated some public record documents. According to Perotti, the material confiscated was not property belonging to another prisoner. Wheeler wrote an incident report on Perotti for lying and possessing another prisoner's property. She called counselor Larson and told her to remove Perotti from his job.

Perotti does not allege that Wheeler herself removed him from his job or had any control over the decision to do so. Although she wrote an incident report related to Perotti, she did not terminate his assignment as a library clerk. Rather, this decision was made by his Correctional Counselor, Susan Larson, and was later affirmed by the Associate Warden, Bonita Mosley.

## Conclusion

Because none of the defendants participated in the decisions regarding Perotti's law library job, they cannot be held personally liable for the acts he complains of. Their motion for summary judgment [37] is therefore **granted** and Perotti's cross-motions [56, 59, and 62] are **denied**.

In light of this ruling, Perotti's most recent request for copies [77] is **denied**.

**IT IS SO ORDERED.**

Date: 09/16/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana