UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOHN W. PEROTTI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:10-cv-00086-JMS-MJD |
| ) | |
| MS. QUIONES Educ. Dir., and ) | |
| MS. KELSHEIMER Asst. Educ. Dir., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Writ of Habeas Corpus Ad Testificandum**

Plaintiff John Perotti petitions the Court for a Writ of Habeas Corpus Ad Testificandum pursuant to 28 U.S.C. § 2241(c)(5). Perotti seeks to be transferred from a federal penitentiary in New Jersey to Terre Haute or Indianapolis, Indiana, to participate in person at trial. That request is opposed by both the defendants and the U.S. Attorney for the Southern District of Indiana, who provided input on behalf of the Bureau of Prisons ("BOP") and the U.S. Marshals Service ("USMS"). For the reasons set forth below, the Court denies Perotti's petition [dkt. 138].

**I. Background**

Perotti is currently an inmate at the Federal Correctional Institution in Fairton, New Jersey. This case is set for a jury trial to begin on August 26, 2013, on the issue of whether Defendants Diane Quinones and Billie Kelsheimer retaliated against Perotti in violation of the First Amendment. The scope of the remaining claim for trial is limited. According to Perotti, he was employed as an education orderly at the United States Penitentiary in Terre Haute, Indiana. Defendant Kelsheimer asked if he wanted to take the law clerk job that recently opened up and for which he was next in line Perotti accepted and was told to begin work immediately as a law

clerk. Approximately two weeks later, he noted that his pay had not increased and his job had not officially been changed to law clerk. Perotti asked Kelsheimer why his job had not been changed and she allegedly told him that her supervisor, Defendant Quinones, told her not to hire Perotti as the law clerk because Perotti filed too many remedies against the education department. Perotti filed a grievance complaining of retaliation. Perotti was then reinstated to the law clerk job and back pay was ordered (although it is unclear from the record whether back pay was received by Perotti). The defendants deny that they retaliated against Perotti or that they had any personal involvement in the decisions related to his employment.

"Perotti has been incarcerated almost his entire adult life." Pet. Dkt. 138 at p. 5. Perotti is currently serving his sentence for being a felon in possession of ammunition as an Armed Career Criminal. *United States v. Perotti*, No. 05-4227 (6th Cir. April 5, 2007) (Slip Opinion).[1]

## II.  Analysis

Perotti has no constitutional right to be personally present at judicial proceedings in a civil case he initiated. *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976); *Hernandez v. Whiting*, 881 F.2d 768, 770 (9th Cir. 1989). However, this fact "does not sanction the summary exclusion of a plaintiff-prisoner from the trial of his prison-connected civil rights claim." *Jones v. Hamelman*, 869 F.2d 1023, 1030 (7th Cir. 1989) (citing *Stone*). This Court has discretion to secure a prisoner's presence at trial through the issuance of a writ of habeas corpus ad testificandum. Section 2241(c)(5) of the Judicial Code authorizes the district court to issue a writ

---

[1] On July 9, 2003, Perotti was a felon on parole for robbery. He had been driving a vehicle when it struck a tree. He was found bleeding, under the influence of something, and in possession of high powered rifle cartridges. A Russian SKS rife with a "stoved piped" round stuck in the chamber was also found in the vehicle. Perotti was charged in a one count superseding indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). A jury found Perotti guilty of possessing the ammunition as a felon, but not the firearm. The jury also found that Perotti had been convicted of three felonies on three different occasions after reaching age eighteen. These convictions included aggravated robbery. He was sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e).

of habeas corpus commanding that the prisoner be delivered to the court "to testify or for trial." These writs can be used to get a prisoner into the district court from anywhere in the country. *Barnes v. Black*, 544 F.3d 807, 809 (7th Cir. 2008) (citing cases). In exercising its discretion, the "court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner." *Stone*, 546 F.2d at 735. In balancing these interests, the Seventh Circuit has instructed:

> the district courts should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

*Stone*, 546 F.2d at 735-36.

More recently (*Stone* was decided on December 10, 1976), courts have also considered available alternatives to producing the prisoner at trial, including, among other things, presenting his testimony via video. "When security concerns and expense become substantial enough considerations, such that they counsel against issuing a writ of habeas corpus ad testificandum, other district and circuit courts are increasingly looking to videoconferencing as a viable alternative to live testimony." *Montes v. Rafalowski*, 2012 WL 2395273, *2 (N.D. Cal. 2012) (denying writ) (citing *Thornton v. Snyder*, 428 F.3d 690, 698 (7th Cir. 2005) (finding that "the district court did not abuse its discretion in conducting the trial by videoconference" when hearing the plaintiff inmate's § 1983 action against corrections officials); *Twitty v. Ashcroft*, 712 F. Supp. 2d 30, 33 (D. Conn. 2009) ("the court finds that expense and security concerns outweigh the plaintiff's interest in physically appearing at trial, particularly in light of the availability of a reasonable alternative, that of having the plaintiff appear by videoconference")).

*See also Thomas v. O'Brien,* 2011 WL 5452012, *2-3 (N.D.N.Y. 2011) (listing cases in support of view that video conferencing technology to permit a prisoner plaintiff's participation in trial has been and continues to gain growing acceptance).

In the instant case, the nature of this civil action, the security risk posed by Perotti, the expense associated with transporting him to the courthouse and the availability of videoconferencing technology all weigh heavily against issuing a writ of habeas corpus ad testificandum.

A. Substantiality

This is a civil action alleging retaliation. The issue is straightforward. There are few witnesses. The time period at issue is a few weeks and the underlying issue was previously resolved through the administrative remedy process. That is Perotti grieved the loss of the law clerk job and was reinstated.

Even if Perotti is successful at trial his potential damages are limited. One issue for trial is whether he is entitled to any back pay. If he is, the amount in controversy is minimal (less than $100). He might also be able to recover nominal damages of $1.00. At the pretrial conference, Perotti stated that he is not particularly interested in back pay or nominal damages; instead, he wants compensatory damages for emotional distress, humiliation and post-traumatic stress disorder which he claims is associated with his short-term termination from employment as a prison library law clerk. Such recovery, however, is not possible under the Prison Litigation Reform Act ("PLRA"). Perotti is a prisoner and his suit is limited by the provision of the PLRA that provides "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Koger v. Bryan*, 523 F.3d 789,

804 (7th Cir. 2008). Because no physical injury is at issue in this case there can be no recovery for mental or emotional injuries. Perotti attempted to assert physical illness resulting from his emotional upset at losing his job, but this is the precise type of claim subsection (e) prohibits.

Some courts have even held that the PLRA prohibits punitive damages absent a physical injury, but this does not appear to be the prevailing law in this Circuit. *Smith v. Peters*, 631 F.3d 418 (7th Cir. 2011)(stating most courts have ruled that punitive damages are not barred by physical injury requirement of § 1997e(e) and citing cases); *but see Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008) (J. Evans, concurring) (finding action "pretty close to a waste of time for all concerned" because injunctive relief claim was moot and PLRA took "compensatory and punitive damages off the table as [plaintiff] suffered no 'physical injury' but only, at best a 'mental or emotional injury'" limiting recovery to nominal damages). Accordingly, the Court will allow Perotti to pursue punitive damages. That said, this Court is not aware of any evidence upon which a reasonable fact-finder could conclude that the defendants' conduct was malicious or in reckless disregard of Perotti's rights (of course the evidence adduced at trial may prove otherwise). Nor is there any reason to believe that given the nature of the claim at issue that any punitive damages award would be significant.

The importance of plaintiff's ability to pursue a civil rights complaint based upon retaliatory actions occurring during his incarceration cannot be trivialized. However, the fact remains that the amount in controversy in this action is minimal under any standard.

    B.    Expense

Perotti is incarcerated at the FCI-Fairton in the state of New Jersey.. The costs of transportation, housing and security will presumably be at government expense as Perotti has made no indication that he is able or willing to pay the costs associated with issuing the writ. The

total monetary cost of transporting Perotti from FCI-Fairton has not been provided by either party. However, in *Stone*, the court was directed to consider not only the cost but also the inconvenience of transporting Perotti from FCI-Fairton to the courthouse where the trial was to be conducted. Thus, the USMS objection to expending employee resources to staff additional deputies for the purpose of transporting Perotti to and from his court appearances, and to be present in court for the duration of the trial to ensure public safety and Perotti's continued confinement is substantial. In a time of sequestration, such as this, concerns about staffing resources and cost containment are real.

Perotti assertion that transporting inmates is routine and thus cost should not be an issue is not persuasive. The high volume of inmate movement does not necessarily reflect that moving Perotti would be easy, but instead could reflect the complex nature of managing all the inmates in the Federal system. As the United States notes that the BOP houses more than 200,000 prisoners throughout the country based upon complicated classification methods.

In addition, Perotti's statement that "defendants had an opportunity to settle this action taking their costs into consideration, they chose not to, tacitly agreeing to their costs of this action" is troubling in general, but more specifically it improperly assumes that the individual defendants bear the costs associated with the issuance of the writ. The costs of issuing a writ will necessarily be imposed on the Bureau of Prisons and United States Marshals Service not on the individual defendants.

C. Security

The security risks posed by Perotti are also a concern. Perotti was convicted in the Northern District of Ohio of being a felon in possession of ammunition and was sentenced under the Armed Career Criminal Act based on his prior convictions. The record reflects that the BOP

has classified him as having a history of serious violence and his transportation requires extreme caution under direct supervision in full restraints. Perotti's statement that his "behavior in federal custody has been without fault" is directly contradicted by the record before the Court and not credible. Dkt. 138 at p. 6. Although, Perotti may have been to court in Ohio more than 20 times without incident this fact is not controlling. "Predictability in inmate movement, exposing staff and the inmate to certain paths of travel on predictable dates and times is of concern in that there is an enhanced opportunity for an escape attempt, a greater opportunity for others to assist the inmate in an escape attempt, and a chance for an attack or an assault on the transporting vehicle." Decl. L. Ward, dkt. 148-2 at ¶ 5.

### D. Suitable Alternative

There is no need for an early determination in this case because as the United States correctly notes, this case involves a past act and damages are not continuing. However, all parties agree that a stay of the litigation in order to allow Perotti's live testimony to be presented following his release would not offer a suitable resolution. Plaintiff's current earliest expected release date is more than five years away in 2019. This alternative would therefore neither be just nor promote the interests of the parties or judicial economy.

Given the nature of this civil action, the security risk posed by Perotti, the expense associated with transporting Perotti and the infeasibility of delaying trial until his release, the possibility of allowing Perotti to appear at trial via videoconference has been explored. The Seventh Circuit has affirmed the use of videoconference to present the plaintiff's testimony at jury trials, where the plaintiff is a prisoner located many miles away, poses a security risk, and is litigating a straightforward claim. *Thornton v. Snyder*, 428 F.3d 690, 699 (7th Cir. 2005) (affirming district court's decision to present plaintiff's testimony by video noting the "relatively

straightforward nature of his claim that he had been denied yard Exercise privileges such that his right to freedom from cruel and unusual punishment was violated.").

There is no question that Perotti has an interest in presenting his testimony in person. The short comings of video testimony are real. *Id.* at 697-98 (discussing shortcomings and cautioning district courts not to take decision lightly). Here, the preference for live testimony, the fact that Perotti may be the only witness for his case, and the credibility issues that are likely to arise at trial are factors weighing in the his favor. While surely not the equivalent of Perotti's actual presence, this alternative will sufficiently allow Perotti to participate and to testify live, and the jury to assess his demeanor and credibility.

Perotti appeared at final pretrial conference by videoconference. There was a disruption in maintaining the video link given a severe storm that passed through New Jersey. Ideally, similar disruptions will not occur during the trial. If such a disruption does occur, however, the Court will simply recess until the connection can be restored. Periodic recesses are not unusual during a jury trial. The video connection itself was satisfactory. Perotti was able to view the relevant portion of the courtroom on the screen (Judge, jury, defense counsel, witness stand) at his location and those present in the courtroom are able to see him on a screen in excess of 42 inches. Both the audio and visual components of the transmission were clear. Perotti's demeanor and facial expressions were visible to all in the courtroom.

In the course of this litigation, Perotti requested the assistance of counsel. The Court granted his motion for counsel on January 13, 2013, and recruited an attorney willing to represent Perotti pro bono. Perotti ultimately requested that his attorney withdraw from this action. The request to withdraw was granted. (Docket Nos. 140, 141, 145 and 146). The result is that Perotti is now acting pro se. Thus, the appearance of Perotti by videoconference will not

result in "counsel [being] forced to choose between being in the same room as [her] client and thus not in the same room as the judge and jury, or remaining in the courtroom with the judge and jury and thus unable to confer in person with his client." *Thornton*, 428 F.3d at 699.

Even with all shortcomings considered, videoconferencing nonetheless facilitates Perotti's meaningful participation at trial: he will be virtually present and able to testify, present evidence, confront witnesses and address the jury. Perotti argues that he will not prevail in this action if he is unable to appear in person. This Court, however, is convinced that if Perotti does not prevail in this civil action it will not be because he testified via video conference.

The use of videoconferencing technology presents a reasonable alternative to Perotti's presence at court and strikes a proper balance between Perotti's interests and the countervailing concerns raised relating to cost and security associated with producing the plaintiff at trial.

### III.  Conclusion

While as a prison inmate Perotti is not wholly divested of his right of access to the courts, he has no constitutional right to be present at a civil trial to be held with respect to his pending civil rights claims. Although this Court has discretion to issue a writ of habeas corpus ad testificandum to Perotti's custodian to require that he be produced at trial, the relevant factors to be considered in deciding whether to exercise that discretion, including notably the substantiality of the claim, the costs arising out of such an order together with security concerns associated with plaintiff's in-person participation, outweigh the need for his presence at trial, particularly given the existence of an acceptable alternative means of presenting his testimony at trial and permitting him to observe the trial proceedings via videoconference. Accordingly, the petition for writ of habeas corpus ad testificandum [dkt. 138] is **denied.**

IT IS SO ORDERED.

08/05/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

JOHN W. PEROTTI
#39656-060
FAIRTON - FCI
FAIRTON FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 420
FAIRTON, NJ 08320