UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JOHN W. PEROTTI,

    Plaintiff,

vs.                                        Case No. 2:10-cv-00086-JMS-MJD

MS. QUINONES Educ. Dir.,
MS. KELSHEIMER Asst. Educ. Dir.

    Defendants.

**ORDER**

Presently pending before the Court are Plaintiff John W. Perotti's Motion for New Trial and Motion Requesting Copy of Trial Transcript at Government Expense. For the reasons addressed below, the motion for New Trial [dkt. 221] is **DENIED** and the Motion for Transcripts [dkt. 233] is **GRANTED.**

**I. Background**

According to Mr. Perotti's Complaint and other filings, he briefly worked as a law clerk in the prison law library while incarcerated at the federal penitentiary in Terre Haute, Indiana. In this lawsuit under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), he alleges that twice he was fired from his law clerk position. The first time, he alleges that defendants Quinones[1] and Kelsheimer took away his job in retaliation because he filed too many grievances. Mr. Perotti reacted to losing his promotion to law clerk by complaining that he was being retaliated against for utilizing the grievance system. Three weeks

---

[1] Mr. Perotti originally listed Ms. Quinones as Ms. "Quiones." The Court will refer to her by the proper spelling of her name.

later, on September 29, 2008, he was reinstated to his clerk position. But shortly thereafter, on October 1, 2008, he was permanently fired by former defendant Ms. Wheeler after he was found guilty of misconduct. Summary judgment was granted as to all claims, including the claim against Ms. Wheeler for the second claim of retaliation based on Mr. Perotti's second termination from his clerk position on October 1, 2008. The Seventh Circuit affirmed the grant of summary judgment with respect to Ms. Wheeler, holding that Mr. Perotti's second termination was not a result of unconstitutional retaliation. This case was remanded for further proceedings as to Defendants Quinones and Kelsheimer to determine whether they retaliated against Mr. Perotti for filing grievances by terminating his employment on or about September 5, 2008.

Given the facts in dispute on this issue a trial was scheduled. A diligent search was undertaken to identify counsel both willing and capable of assisting Mr. Perrotti at trial. Pro Bono counsel was eventually recruited and appeared on behalf of Mr. Perotti. Given recruited counsels' recent appearance an additional period of discovery was permitted. See dkt. 119. Prior to trial, however, Mr. Perotti terminated recruited counsel's representation. Mr. Perotti's gripes regarding his former counsel reflect his unrealistic expectations. In any event, this case was tried before a jury on August 26, 2013.

At trial the evidence was unclear regarding whether Perotti ever held the position of law clerk between August 2008 and September 29, 2008 (when he was officially hired to the position of law clerk). If he never held the law clerk position, he could not have been terminated from that position on September 5, 2008. Throughout this time period, however, Perotti did work in the law library. When he was not doing "law clerk" work he was providing janitorial services. Ms. Kelsheimer testified she knew Mr. Perotti but she was not the person who assigned law clerk jobs. Ms. Quinones testified she did not know Mr. Perotti, and did not recall him filing

grievances. Ms. Quinones also testified that many inmates filed grievances about law library access. Those grievances were considered a routine part of addressing inmate concerns. In addition, there was evidence that Mr. Perotti had only filed one grievance against the law library staff before the mix up with the law clerk job. The jury apparently accepted the defendants' version of the facts and concluded that neither Ms. Quinones nor Ms. Kelsheimer retaliated against Perotti.

## II. Motion for New Trial

In his motion for new trial Mr. Perotti raises 13 grounds on which he bases his claim that he is entitled to a new trial. Preliminarily, the Court observes the Mr. Perotti has struggled with the distinction between his rights and obligations in this civil proceeding, and rights he may have in a criminal proceeding, such as the Sixth Amendment right to effective assistance of counsel and the funding provisions of the Criminal Justice Act, 18 U.S.C. § 3006A. He has repeatedly complained that the Court would not assist him. Indeed the Court had no obligation to do so, as Mr. Perotti was advised. (*See* Dkt. 210, "Perotti's objections reflect his misperception that because he is pro se this Court or the defendants have an obligation to assist him with his case. 'District judges have no obligation to act as counsel or paralegal to pro se litigants.' *Pliler v. Ford*, 542 U.S. 225, 231 (2004"). Counsel was recruited to assist Perotti in this action pursuant to Local Rule 4-6. Perotti chose to terminate that representation and must now live with the consequences of that decision.").

Yet the record establishes that when proper, and when not prejudicial to the defendants, the Court did seek to assist Mr. Perotti. The results weren't always as he liked. But this was his case to present, his evidence to marshal, and his burden of proof. Difficulties resulting from his incarceration were not of the Court's making.

Further, the Court notes that Mr. Perotti continually sought to expand the scope of proceedings beyond the one claim deemed viable by the Seventh Circuit as a result of his partially successful appeal of the Court's earlier summary judgment ruling. *See Perotti v. Quinones*, 488 Fed.Appx. 141, 2012 WL 2855771 (7th Cir. 2012). The lone claim subject to remand involved Mr. Perotti's allegations that defendants Quinones and Wheeler retaliated against him for filing grievances, by terminating his employment on or about September 5, 2008. The Court's refusal to expand the scope of the proceedings beyond the Seventh Circuit's mandate, while frustrating to Mr. Perotti, was not improper.

The Court will address each of Mr. Perotti's grounds for a new trial in turn.[2]

1. **Conducting trial by videoconference.** Mr. Perotti again objects to conducting the trial via videoconference. The Court addressed his argument in a prior entry, [dkt. 197] and noted the adequacy of the trial via videoconference in the jury trial minute entry [dkt. 213]. No ground for a new trial is presented here.

2. **Subpoena forms, Attendance of witnesses, Depositions of Witnesses and Location of a Witnesses.** Mr. Perotti reasserts his argument that the Court should have issued 20 blank subpoenas prior to trial. The Court denied this request [dkt. 178], indicating it would discuss subpoenas for actually identified witnesses at the final pre-trial conference. That discussion occurred and no prejudice or harm has been identified by the lack of blank subpoenas. Rather, at the final pre-trial conference, Mr. Perotti identified four witnesses he intended to call: Bonita Mosely, Michael Lowery, inmate Ernest Hill, and an inmate with the last name of Emerick. [Dkt. 195.] Each witness will be addressed separately.

---

[2] To the extent the Court has already stated its reasoning with respect to the issues raised in a prior Entry, the Court's ruling may be more summary in nature. The Court will endeavor to cite its earlier rulings.

a. **Bonita Mosely**. Ms. Mosely testified, so Mr. Perotti's only complaint about her is that the Court did not permit him to depose her after the discovery cut-off and after he fired his recruited counsel. Prior to trial, Ms. Mosely testified by way of declaration in support of the Defendants' earlier filed motion for summary judgment [dkt. 37-5]. Mr. Perotti's request to take her deposition came two months after the discovery cut-off. [See dkts. 119, 151, 164, and 175.] Mr. Perotti has pointed to no surprise in her testimony nor error in the Court's adherence to its deadlines.

b. **Michael Lowery**. Mr. Lowery supposedly once worked at the United States Penitentiary in Terre Haute, Indiana, but had retired several years prior to trial. Mr. Perotti never requested leave to depose him, so his only claim could be that the Court refused to issue a subpoena. No properly submitted subpoena was ever submitted. In an effort to assist Mr. Perotti, the Court did ask the Bureau of Prisons ("BOP") to determine whether it had a current address for Mr. Lowery, and advised Mr. Perotti it would calculate the proper amount of the witness fee if it was provided the address [dkt. 195, ¶1b.] The BOP did not have a current address for Mr. Lowery [dkt. 198.] As the Court explained to Mr. Perotti, it was his responsibility to locate his witnesses and provide them with the required witness fees [dkt. 201]. He failed to do so and the Court's courtesy efforts to assist in locating Mr. Lowery were unsuccessful. This lack of success is no basis for error.

c. **Ernest Hill.** Ernest Hill was formerly a fellow inmate of Mr. Perotti. As with Ms. Mosely, Mr. Perotti sought to depose him two months

after the discovery cut-off, and the Court denied his request. [See dkts. 151, 164, and 175.] Again, there was no error in the Court's adherence to its deadlines. Mr. Perotti still hoped to call him at trial, and at the final pre-trial conference the Court attempted to locate Mr. Hill through the BOP website's offender locater to determine whether a writ for his attendance could be issued. The only Ernest Hill shown in custody was in Kentucky, and it was Mr. Perotti's assertion that witness Ernest Hill was in California. The Court concluded that potential witness Hill may have been released. The Court indicated it would take no further action absent additional information [dkt. 195 ¶1c.]. Mr. Perotti objected following that ruling by stating he had submitted a subpoena for Mr. Hill in advance of Mr. Hill's release from BOP, but this contention afforded him no relief [dkts. 203 and 204]. The proffered subpoena was improperly addressed to the warden of the facility in California where Mr. Hill had been housed, did not include witness fees, and was beyond the Court's subpoena power. [*Id.*]

   d. **Witness Emerick.** At the final pre-trial Mr. Perotti reached the conclusion that he did not really care about Mr. Emerick. No error can be predicated on his absence as a witness.

3. **Motions in Limine.** Mr. Perotti re-raises his objections to the Court's rulings in limine concerning his prior criminal history, the defendants' alleged work-related discipline, and events happening after October 1, 2008.

   a. Prior Criminal History. Mr. Perotti moved in limine to exclude evidence of "any details of his criminal history." [Dkt. 172.] Noting that the

rules of evidence permit impeachment by prior felony conviction, the Court granted the motion to the extent that there would be no evidence of the "details of Perotti's felony conviction and the nature of his crimes . . . however, the fact that Perotti is incarcerated for committing a felony is admissible." [Dkt. 195 ¶9b.] Mr. Perotti then stated he intended to testify that he was in custody for possession of bullets. The Court warned him that such testimony might open the door to additional details of his conviction [dkt. 210 ¶3d.] Mr. Perotti now characterizes that warning as evidence of the Court's bias. It was not. In any event, no details of Mr. Perotti's criminal history, other than the fact that he was incarcerated for a felony were admitted in evidence. The ruling was proper and is not grounds for a new trial.

      b. Discipline of defendants. The Defendants moved in limine to exclude evidence of any other lawsuits against them or employment related discipline. The only evidence of any discipline against either defendant was a reprimand issued to Defendant Quinones for inattention to duty. The Court ruled there was no evidence of dishonesty presented by the discipline. The Court found such incident and any other lawsuits[3] irrelevant, and maintains that ruling.

      c. Events after October 1, 2008. As noted earlier, Mr. Perotti's case was originally dismissed via summary judgment [dkt. 78]. He appealed and was successful in part. Mr. Perotti takes several swipes at the Court of Appeals decision, but its ruling was clear. The retaliation claim related to Mr.

---

[3] There was no evidence that Ms. Kelsheimer had ever been sued before.

Perotti's initial hiring as a law clerk was reinstated and remanded for trial. Summary judgment was affirmed, however, with respect to Mr. Perotti's claim that he was unconstitutionally terminated a second time from the law clerk position on October 1, 2008 by Ms. Wheeler, who was not a defendant here. Accordingly, this Court excluded any evidence of events occurring after that date. In his motion Mr. Perotti complains that the Court should have allowed evidence of post-October 1st events. The Court deemed such evidence irrelevant for the following reasons: the Court of Appeals determined that Mr. Perotti's claim of unconstitutional retaliation related to his October 1, 2008 termination failed as a matter of law; that claim did not involve the defendants on trial; and events occurring after the date of the initial alleged retaliation could not possibly have formed the basis of retaliation asserted against these defendants. The Court did note that it would permit Mr. Perotti to introduce evidence of any grievances that pre-dated his initial appointment to the law clerk position which might have formed the basis of his claim that he was first fired for "filing too many grievances." He provided proof of only one.

4. **Exclusion of Exhibits.** Consistent with its ruling in limine on post October 1, 2008, conduct, and for the same reasons, the Court sustained the Defendants' objections to certain exhibits Mr. Perotti offered. [Dkt. 213 at. 1.] He claims that their exclusion left the impression that he was "satisfied with the previous decisions." [Dkt. 221 at 6.] This argument is difficult to understand given that Mr. Perotti was suing the Defendants for those precise decisions. Mr. Perotti also contends that certain excluded

exhibits F-J "were going to be used to show how the BOP and USP Terre Haute staff goes out of their way to deny prisoners due process, as well as fair play." [*Id.* at 7.] But only Defendants Kelsheimer and Quinones were sued here, and such evidence was not relevant to prove Mr. Perotti's retaliation claim against them and would have been prejudicial.

5. **Defendants' exhibits and the jury binders.** The morning of trial before jury selection, the Court addressed the admission of exhibits. All objections were ruled upon in advance of trial, and all exhibits were admitted. Only the admitted exhibits were included in the jury binders, and Mr. Perotti's claim otherwise has no basis.

6. **Denial of Mr. Perotti's Writ of Habeas Corpus ad testificandum.** The Court incorporates the reasoning set forth in the rulings noted in paragraph 1 of this Entry. The Court further addresses however, Mr. Perotti's insinuation that the Court's experimentation with the layout of the courtroom during the final pre-trial constitutes some form of bias. The Court thought it better to work with Mr. Perotti to determine what he might be able to see and gain that information as background for its ruling. It is not evidence of bias.

7. **Mr. Perotti's Offer of Proof.** Mr. Perotti provided an offer of proof as to what witnesses Hill and Lowery would have said had he called them prior to jury selection. The Court noted then, and maintains now, that it never excluded their testimony, so the offer of proof could not have impacted any ruling by the Court. Mr. Perotti failed to arrange for their testimony prior to terminating his recruited counsel or through his own efforts. Finally, there has never been evidence presented that Mr. Hill was ever within the Court's subpoena power.

8. **Appointment of counsel.** Mr. Perotti complains that counsel should have been appointed for trial, but neglects to note that the Court had recruited counsel, who attended Mr. Perotti's deposition in New Jersey at her own expense, and who conducted depositions of the Defendants. Mr. Perotti disagreed with her pre-trial strategy and requested that her representation be terminated. [Dkt. 145.] This was his choice. The Court should not be required to serially recruit counsel, and refused to do so in this instance. In addition, the Court is not convinced that additional efforts to recruit counsel to assist Mr. Perotti would have been successful even if that effort had been undertaken. Finally the Court observes that Mr. Perotti capably represented himself at trial. He argued, gave testimony, and conducted direct and cross-examination.

9. **Mistrial due to break in videoconferencing.** Near the conclusion of the trial, during the reading of final instructions, the video connection to Mr. Perotti was broken. It was immediately brought to the Court's attention, and after one attempt to re-establish it was made, the jury was excused. No additional instructions were read to the jury, and prior to leaving the courtroom, the jury was admonished not to discuss the case. No other communication with the jury occurred. Once the connection was re-established, Mr. Perotti moved for a mistrial, which motion the Court denied. The Court inquired of Mr. Perotti as to the last instruction he had heard (he had a written copy of the jury instructions provided to him in advance). The Court's understanding was that the last instruction was No. 8, which advised the jury about consideration of Mr. Perotti's felony conviction on the issue of credibility. Mr. Perotti had objected to the instruction, so the Court asked whether he agreed it would be proper to start at No. 9, avoiding repetition of the challenged instruction. He agreed.

10. **Verdict against the weight of the evidence.** Mr. Perotti raises a challenge to the Defendants' version of the facts, which version was apparently credited by the jury. The defendants denied retaliating against him. Ms. Quinones denied even knowing who he was or whether he had ever filed a grievance. He suggests that his version and not theirs should be credited and that had he been present and represented by counsel "the questioning would have been a lot cleaner." [Dkt. 221 at 10.] The questioning was not disjointed. The Defendants simply disagreed with the points Mr. Perotti was trying to make. Neither claim warrants relief.

11. **Inability to hear the jurors' responses when polled.** It is the Court's practice to poll the jury once the verdict has been read, in all cases. Mr. Perotti acknowledges the Court advised him of this practice but suggests that advice somehow was a statement by the Court that the outcome against him had already been determined by the jury, and that the Court discerned this from the jurors' facial expressions. There is no basis whatsoever for such a claim, and the Court never made any observations that the jurors' facial expressions revealed their thought processes. Mr. Perotti could not hear the jurors' responses during the polling because they were not speaking into a microphone. They each acknowledged the verdict as their own. No new trial is warranted on this basis.

For all of the foregoing reasons, Mr. Perotti's Motion for a New Trial [dkt. 221] is **DENIED.**

### III. Motion Requesting Copy of Trial Transcript at Government Expense

Citing his indigency, and in apparent preparation for filing an appeal, Mr. Perotti seeks a copy of the trial transcript. The motion for a copy of the trial transcript is **GRANTED.** The reason for this ruling is that Mr. Perotti undoubtedly plans to appeal this court's decision to

provide for his appearance by video conference and not in person. The Court finds this issue is not frivolous and presents a substantial question. See 28 U.S.C. § 753(f). While this Court found the proceedings via videoconference to be adequate, the best supporting evidence of this conclusion is the trial transcript. Accordingly, **the court reporter is directed** to transcribe and docket the transcript for the proceedings held on August 26, 2013 at government expense.

Date: 01/09/2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JOHN W. PEROTTI
#39656-060
FAIRTON - FCI
FAIRTON FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 420
FAIRTON, NJ 08320

All Electronically Registered Counsel